# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR05-0084 |
| vs. | **REPORT AND RECOMMENDATION** |
| MATTHEW VARNER, | |
| Defendant. | |

This matter comes before the court pursuant to the defendant's December 12, 2005, motion to suppress evidence (docket number 11). The court held an evidentiary hearing on this motion on December 16, 2005, at which the defendant was present and represented by The defendant was present and was represented by Assistant Federal Public Defender JoAnne Lilledahl. The government was represented by Assistant United States Attorney Robert Teig. It is recommended that the motion to suppress be denied.

This case arises out of a January 3, 2005, arrest of the defendant outside his residence. The defendant contends that the subsequent seizure of drugs, drug paraphernalia, and ammunition from his house as well as statements made by him are the product of an illegal search of the residence. The government contends that the items seized were in plain view of police officers who had the authority to be in the places where they observed these objects. The court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On January 30, 2005, Cedar Rapids Police Officers Joshua McAlpin and Joshua Bell went to the residence at 307 33rd Street NE in Cedar Rapids. They went there to execute an arrest warrant for defendant Matthew Varner for failure to pay child support. The officers recalled that the residence had been the location of a methamphetamine laboratory fire approximately one year earlier, although they did not believe that Matthew

Varner was associated with that incident. The residence is owned by Jennifer and J.T. Keltchner. The police noticed that there was a surveillance camera mounted to the front of the residence.

The officers knocked at the door of the residence and the defendant answered. They asked if he was Matthew Varner and he said that he was. They got his date of birth and called this information into the dispatch to verify that there was an active warrant outstanding for his arrest. The defendant acknowledged having a problem with child support but thought that the matter had been resolved. When it was determined that the warrant was active, the defendant was placed under arrest outside the front door of his residence.

The defendant stated that he wanted to go back inside the house and alert a female in the basement of his arrest so that she could care for his dog. The officers and the defendant entered the house. When the police indicated that they wanted to go with him to the basement to notify the woman, the defendant indicated that he just wanted to be taken promptly to jail.

Officer Bell then observed a glass methamphetamine pipe on the coffee table approximately seven feet away from the doorway where they were standing. The defendant denied that it was his, claiming that he resided in the basement. The police officers moved toward the coffee table and retrieved the pipe. Shortly thereafter, the defendant asked if he could smoke a cigarette. He yelled down the stairs to his girlfriend, Ashley Davis, who came upstairs. After she came upstairs, the defendant asked if he could get his cigarettes. The police told the defendant that they would accompany him downstairs if he were to retrieve them. The defendant then asked whether Ms. Davis could retrieve his cigarettes. The police again told him that they would accompany her downstairs if she left to get the cigarettes. Officer Bell then told the defendant that he would not search the defendant's belongings but would just accompany Ms. Davis for security purposes. The defendant then said that it was okay for the police to accompany Ms. Davis downstairs. Officer McAlpin stayed with the defendant in the livingroom.

In the small basement to the house, Officer Bell observed a toolbox with a towel over it and a tray on top of the towel. The cigarettes that Ms. Davis retrieved were either on the tray or next to it. Officer Bell also observed marijuana, drug paraphernalia, and a clear baggie with white powder on the tray. Officer Bell and Ms. Davis went back upstairs.

The defendant was given his <u>Miranda</u> warnings. He was then asked questions about what Officer Bell had observed. He indicated that some of the items were his and denied knowledge of others. Officer Bell then went to the basement to retrieve those items. At that time, he observed a box of .22 caliber ammunition. He seized that ammunition because he had just received training from the Bureau of Alcohol, Tobacco, and Firearms about the illegality of a user of controlled substances in possession of firearms or ammunition. Officer Bell then opened an eyeglass case and another small box that contained drug paraphernalia.[1]

## **CONCLUSIONS OF LAW**

The issues in this matter are squarely controlled by the United States Supreme Court's decision in <u>Washington v. Chrisman</u>, 455 U.S. 1 (1982). In <u>Chrisman</u>, the Supreme Court held that where police have the defendant lawfully in custody under arrest, they have a right to remain literally at the defendant's elbow at all times. The court held that it is not unreasonable under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person following arrest. <u>Id.</u> at 817. <u>See also</u> <u>United States v. DeBuse</u>, 289 F.3d 1072, 1074 (8th Cir. 2002).

In this case, it was completely the defendant's desires that dictated the officers' movement within the home. It was his desire to alert the other occupant of the home that caused the police to enter. He first exercised his option to restrict movement within the home by asking to go immediately to jail. Then, after the police found a piece of drug

---

[1] The government recognizes that Officer Bell had no authority to open any container pursuant to its plain view search authority. The government concedes that such evidence is subject to suppression and will not offer these items into evidence at trial.

paraphernalia, the defendant asked to get his cigarettes. The defendant consented to the request of the police to accompany the female occupant to go get the cigarettes upon the officer's representation that the defendant's belongings would not be searched. Once in the basement, the officer observed the items described in the findings of fact in plain view.

In Chrisman, the Supreme Court did not make a distinction between the types of security necessary for different kinds of arrests. "Every arrest must be presumed to present a risk of danger to the arresting officer." Chrisman, at 817. However, it should be noted that the police had additional information that reasonably caused them to request to accompany the female occupant to the basement. First, the police were aware that the house was the source of a methamphetamine laboratory one year earlier. Second, as the police approached the house, they observed a surveillance camera mounted to the front of the residence. Finally, once inside the home, police observed drug paraphernalia and were not fully acquainted with the female occupant. Under these circumstances, the plain view search and seizure of the items described above was appropriate.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[2] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the defendant's December 12, 2005, motion to suppress evidence (docket number 11) be denied.

December 20, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[2]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.