# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 05-0084-LRR |
| vs. | |
| MATTHEW VARNER, | **ORDER** |
| Defendant. | |

_____

## I. INTRODUCTION

The matter before the court is Defendant Matthew Varner's Objections To Report And Recommendation And Request To Supplement When Transcript Is Available (docket no. 26).

## II. PROCEDURAL BACKGROUND

On September 28, 2005, Defendant was charged in a two-count Indictment. Count 1 charges Defendant under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) with possessing, in and affecting commerce, ammunition, to wit: a box of Western Super X .22 ammunition, on or about January 30, 2005, after having been previously convicted of a crime punishable by imprisonment for a term exceeding one year. Count 2 charges Defendant under 18 U.S.C. §§ 922(g)(3) and 924(a)(2) with possessing, in and affecting commerce, ammunition, to wit: a box of Western Super X .22 ammunition, while being an unlawful user of a controlled substance on or about January 30, 2005. The Indictment also contains a forfeiture provision. It provides that, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), by virtue of the commission of Counts 1 and 2, Defendant shall forfeit any

ammunition involved in or used in the violation of 18 U.S.C. §§ 922(g)(1) or (g)(3) including but not limited to the ammunition listed in Counts 1 and 2.

On December 12, 2005, Defendant filed a Motion to Suppress ("Motion") (docket no. 11). In such Motion, Defendant seeks to suppress the items seized from his residence on January 30, 2004. On December 15, 2005, the government filed a Resistance (docket no. 17). On December 16, 2005, Chief Magistrate Judge John A. Jarvey held an evidentiary hearing on the Motion (the "Hearing"). Defendant was personally present and represented by counsel, Joanne Lilledahl. Assistant United States Attorney Robert Teig represented the government. On December 20, 2005, Judge Jarvey filed a Report and Recommendation (docket no. 21) recommending the denial of Defendant's Motion. On December 30, 2005, Defendant filed his Objections to the Report and Recommendation ("Objections") (docket no. 26). The court finds these matters to be fully submitted and ready for decision.

### III. STANDARD OF REVIEW

The district court judge is required to make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which a movant objects. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). The district court judge may accept, reject or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); *see also United States v. Trice*, 864 F.2d 1421, 1424 (8th Cir. 1988). Defendant has made specific, timely objections to the Report and Recommendation. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b) (requiring *de novo* review of a magistrate judge's report and recommendation on dispositive motions).

## IV. ANALYSIS[1]

### A. *Findings of Fact*

Defendant objects to the following specific findings of fact by Judge Jarvey in the Report and Recommendation:

1. That officers only found evidence in plain view and did not conduct a search; and

2. That it was only Defendant's desire for a cigarette that caused officers to remain in the residence and go into the basement.

Defendant first objects to the finding that the evidence to be admitted was found in plain view and not pursuant to a search. More specifically, Defendant objects to the factual determination that the box of .22 caliber ammunition was found in plain view and was not found pursuant to a warrantless search of the residence. At the Hearing, Officer Joshua Bell testified that he went back down into the basement to retrieve the pipe and marijuana that he saw when he went into the basement with Ashley Davis, Defendant's roommate. While he was in the basement, Officer Bell looked to the right of the contraband and saw a box of .22 caliber ammunition on the top of the desk. Officer Bell saw the box of ammunition in plain view and did not obtain the ammunition pursuant to a subsequent search of the residence. Accordingly, Defendant's objection to this factual finding is overruled.

Defendant next objects to the finding that Officer Bell only entered the basement of the residence because he was escorting Ms. Davis as she sought to obtain Defendant's

---

[1]The court notes that although it is unclear what objections Defendant raises as objections to the factual findings and what objections are objections to legal conclusions, the court addresses Defendant's objections in the manner that the court assumes Defendant raises them.

3

cigarettes. Defendant contends that officers actually intended to search the residence for contraband. At the Hearing, Officer Josh McAlpin testified that he explained to Defendant that an officer would have to escort either Defendant or Ms. Davis into the basement. Defendant was in custody and, therefore, the officers had the authority to escort him. The officers stated that Ms. Davis would have to be escorted for safety reasons. More specifically, Officer Bell testified that Ms. Davis would have to be escorted into the basement by an officer "just for [officer] safety due to the history of the house and due to the fact that [the officers did not] know her relationship with [Defendant], whether or not she would be somebody that maybe wants to get him out of custody." At the Hearing, the officers made clear that they only entered the basement because Ms. Davis went to the basement to retrieve Defendant's cigarettes. They did not go into the basement to search for contraband. Accordingly, Defendant's objection to this factual finding is overruled.

After a *de novo* review of the record, the court adopts the findings of fact contained in Judge Jarvey's Report and Recommendation.

### *B. Conclusions of Law*

With respect to the legal conclusions of the Report and Recommendation, Defendant objects to the following:

>    1. That *Washington v. Chrisman*, 455 U.S. 1 (1982), governs the decision to allow the introduction of the evidence obtained in his residence;
>
>    2. That officers had a right to enter Defendant's residence after he had been placed under arrest;
>
>    3. That officers properly remained in Defendant's residence instead of taking him immediately to jail;
>
>    4. That officers had the right to accompany Defendant's roommate into the basement; and

4

> 5. That officers had the right to return to the basement to retrieve the contraband.

Therefore, Defendant contends that the items seized are due to be suppressed.

For purposes of its *de novo* review of the legal conclusions, the court reviews Defendant's objections as if there were three objections, that is, objection number one and two are analyzed together.

### *1. Washington v. Chrisman*

Defendant first objects to the legal conclusion in the Report and Recommendation that the case governing Defendant's Motion to Suppress is *Washington v. Chrisman*, 455 U.S. 1 (1982). Defendant alleges that officers had no right to enter Defendant's residence after he had been placed under arrest.

In *Chrisman*, the Supreme Court addressed the admissibility of evidence obtained by a police officer when he accompanied an arrestee into his dorm room. 455 U.S. at 2. The officer stopped a student leaving a school dormitory carrying a bottle of gin because the student appeared to be underage. *Id*. The student informed the officer that he needed to return to his room for his identification and consented to having the officer accompany him. *Id*. The student's roommate, Chrisman, was in the dorm room when they arrived. The student entered the room and the officer stood in the doorway. *Id*. The officer noticed that Chrisman looked very nervous. *Id*. As the officer was waiting, he observed seeds, which the officer believed were marijuana, and a small pipe, similar to one used to smoke marijuana, on a desk in the room. *Id*. The officer entered the room and informed the roommates of their *Miranda* rights. *Id*.

The Supreme Court noted that the officer had placed the student under arrest and, therefore, was authorized to accompany the student into his dorm room. *Id*. at 816. Because the officer had the right to be in his dorm room and was able to see the marijuana

and pipe in plain view, no warrant was necessary under the plain view exception to the warrant requirement. *Id*. As in *Chrisman*, Officers McAlpin and Bell arrested Defendant outside of his residence pursuant to a valid warrant. When Defendant requested to go into the residence to tell his roommate, Ms. Davis, that he was leaving, Officer McAlpin properly explained that the police officers would have to escort him. Because Defendant had been lawfully arrested, officers had the authority to accompany him into the residence. *See Chrisman*, 455 U.S. at 6. Accordingly, Defendant's objection to the determination that officers improperly entered his home is overruled.

### 2. *Remaining in Defendant's residence*

Defendant next objects to the legal conclusion in the Report and Recommendation that officers properly remained in Defendant's residence instead of taking him immediately to jail. Officer McAlpin testified that, as he entered the living room with Defendant, he saw a glass pipe on the coffee table. Officer McAlpin explained that, based on his experience, he knew that the pipe was probably used for smoking methamphetamine. As he was talking with Defendant about the pipe, Defendant asked if he could go into the basement to get his cigarettes. Although officers had not read Defendant his *Miranda* rights before asking him about the glass pipe, the government is not seeking to enter the pipe into evidence. Officers were in Defendant's house at his invitation, and Defendant is the one who requested his cigarettes. Furthermore, Officer McAlpin testified that it is not unusual to permit cooperative arrestees to smoke a cigarette before they are transported to the police department. It was Defendant's request to smoke a cigarette and not the officers desire to search the residence that kept them on the premises. Accordingly, Defendant's objection to this legal conclusion is overruled.

### 3. *Accompanying Ms. Davis*

Defendant objects to the legal conclusion that Officer Bell had the authority to

accompany Ms. Davis into the basement to retrieve Defendant's cigarettes. At the Hearing, Officer Bell stated that Defendant requested to go into the basement to retrieve his cigarettes. Officers McAlpin and Bell explained to Defendant that he would have to be escorted into the basement by a police officer. Defendant then asked if Ms. Davis could go to the basement to retrieve his cigarettes. The officers explained that, for safety reasons, Ms. Davis would need to be escorted into the basement by a police officer. At the Hearing, Officer Bell stated that he and Officer McAlpin would only allow Ms. Davis to go into the basement if she had a police escort because they did not know who Ms. Davis was, did not know if there was anyone else in the basement and wanted to make certain that she was, in fact, retrieving cigarettes. When the officers explained to Defendant that they only intended to escort Ms. Davis to get Defendant's cigarettes and were not going to search the basement, Defendant consented to Officer Bell accompanying Ms. Davis into the basement. Accordingly, Officer Bell had Defendant's permission to be in the basement with Ms. Davis. *See United States v. Shigemura*, 123 F. 2d 699, 706 (8th Cir. 1982) (holding that warrantless entry into a residence is proper if the defendant consented to the entry). Once in the basement, Officer Bell did not "search" for the contraband but saw it in plain view on the tray with the cigarettes. Defendant's objection to this legal conclusion is, therefore, overruled.

### *4. Returning to basement*

Lastly, Defendant asserts that Officer Bell did not have the authority to re-enter the basement to seize the contraband that he had previously seen in plain view. Several circuits have held that the delay between seeing an item in plain view and seizure of the item is analyzed using a reasonableness test consistent with other Fourth Amendment analysis. *Emery v. Holmes*, 824 F.2d 143, 148 (1st Cir. 1987) (noting that the delay between the officers seeing the vehicle in plain view and its eventual seizure was to be

analyzed based on the reasonableness of the delay) ; *Price v. United States*, 348 F.2d 68, 70 (D.C. Cir. 1965) (holding that delayed seizure of items viewed in arrestee's vehicle at time of arrest is proper as long as the delay is reasonable); *United States v. Woods*, 560 F.2d 660, 666 (5th Cir. 1977) (holding that a delay between seeing a firearm in plain view and seizing the firearm did not violate the Fourth Amendment due to the relatively brief delay and the fact that officers never left the residence where the firearm was located). "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991); *United States v. Terry*, 400 F.3d 575, 579 (8th Cir. 2005). The court will, therefore, analyze the reasonableness of Officer Bell's return to the basement to seize the contraband.

Officer Bell testified that after seeing the contraband in the basement, he escorted Ms. Davis upstairs. Officer Bell informed Officer McAlpin that he had seen the contraband in plain view. Officer McAlpin read Defendant his *Miranda* rights, and Officer Bell asked Defendant about the marijuana pipe and the marijuana. Defendant explained to the officers that both the pipe and marijuana belonged to him and that he was a marijuana user. Officer Bell then returned to the basement to retrieve the items.

The delay in seizing the contraband was reasonable. It was reasonable for Officer Bell to escort Ms. Davis out of the basement before seizing the pipe and marijuana. Officer Bell apparently wanted to secure Ms. Davis before seizing the evidence. The length of the delay was also minimal, only a matter of minutes to ask Defendant about what Officer Bell had seen. *See Woods*, 560 F.2d at 666. Officer Bell's return to the basement to seize the contraband that he had seen in plain view was reasonable and did not violate the Fourth Amendment.

Furthermore, once Officer Bell properly returned to the basement to seize the contraband, he could also seize the ammunition that was in plain view on the top of

Defendant's desk.  *Horton v. California*, 496 U.S. 128, 136 (1990)  (An officer, who is properly in the place where an item can be seen, may seize the item if its incriminating nature is readily apparent.)  Officer Bell testified that he had recently completed an ATF class on the possession of a firearm by a felon and controlled substance user, so he was aware of the criminal nature of the firearm ammunition.  Accordingly, Defendant's objection is overruled.

The court agrees with Chief Magistrate Judge Jarvey's analysis and finds no merit in Defendant's Objections to the Report and Recommendation's conclusions of law.

### V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) The court **OVERRULES** Defendant Matthew Varner's Objections to Report and Recommendation (docket no. 26);

(2) The court **ADOPTS** Chief Magistrate Judge Jarvey's Report and Recommendation of December 20, 2005 (docket no. 21); and

(3) The court **DENIES** Defendant Matthew Varner's Motion to Suppress (docket no. 11).

**SO ORDERED.**

**DATED** this 22nd day of February, 2006.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA